IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| Lavonne S.,[1] | Case No. 2:18-cv-01897-AA |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

AIKEN, District Judge:

Plaintiff Lavonne S. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner previously denied plaintiff's application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

## BACKGROUND

On August 6, 2014, plaintiff filed for DIB with a date last insured of December 31, 2016. In her applications, plaintiff alleged disability beginning on December 11, 2011 due to a combination of physical impairments, including degenerative disc disease of the cervical spine; degenerative joint disease of the left shoulder; gastroesophageal reflux disease; and left eye vision disorder.

Plaintiff's application was denied initially and upon reconsideration. On February 17, 2015, plaintiff filed a written request for hearing before an Administrative Law Judge ("ALJ"). An administrative hearing was held on February 22, 2017, where plaintiff was represented by council. Plaintiff and a vocational expert ("VE") offered testimony. The record was held open pending submission of documentation of the alleged onset date from plaintiff's treating physician. That documentation was provided the day following the hearing. A second administrative hearing was held on August 8, 2017 at which plaintiff and a different VE offered testimony. The ALJ found plaintiff not disabled in a written decision issued on August 30, 2017. After the Appeals Council denied review, plaintiff filed the present complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the ALJ's decision unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Harmless legal errors are not grounds for reversal. *Stout*, 454 F.3d at

1054 (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and internal quotation marks omitted). The court must evaluate the complete record and weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests on the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" since the alleged onset

date of December 11, 2011 through the date last insured of December 31, 2016. Tr. 17; 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found that plaintiff had severe impairments of "gastroesophageal reflux disease, left eye vision disorder, degenerative disk disease of the cervical spine, and degenerative joint disease of the left shoulder." Tr. 18; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii). At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 19; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). The ALJ found that plaintiff

> had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except to occasionally stoop, squat, crouch, crawl, and kneel; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; occasionally reach overhead with the dominant left upper extremity and frequently reach at or below shoulder level with the left upper extremity; never balance; and must not work at heights, drive, or work in close proximity to hazardous conditions. Can engage in mental activity to that required in order to perform jobs at the SVP four level.

Tr. 19-20.

At step four, the ALJ found that plaintiff "was unable to perform any past relevant work." Tr. 26; 20 C.F.R. 404.1565. At step five, the ALJ found that based on plaintiff's age, education, work experience, and RFC, plaintiff "had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy," including claims clerk,

revival clerk, and information clerk. Tr. 27-28; 20 C.F.R. 404.1569(a); *id.* § 404.1568(d). Accordingly, the ALJ found that plaintiff was not disabled under the Act and denied her application for benefits.

## DISCUSSION

Plaintiff raises four assignments of error on appeal. She contends that the ALJ erred in: (1) improperly rejecting medical sources; (2) improperly omitting limitations from plaintiff's severe eye impairment; (3) improperly discounting plaintiff's subjective testimony; and (4) failing to conduct an adequate Step Five analysis. The Court addresses each issue in turn.

I. *Medical Source Opinion*

A. *Dr. Keith de Young – Treating Physician*

Plaintiff first argues that the ALJ improperly rejected the opinion of Dr. Keith de Young, her treating physician. Plaintiff claims that Dr. de Young based his limitations on plaintiff's pain symptoms that were aggravated by light activity. She argues that the record does not show that her symptoms were temporary, and points to Dr. de Young's reference of "numerous medical signs and symptoms prior to [her left shoulder] surgery" which occurred days after the period at issue. Pl.'s Br. at 14. Finally, plaintiff argues that the ALJ improperly relied on a single examination to conclude that Dr. de Young's findings were inconsistent with the record as a whole.

In Social Security cases involving denial of DIB, three types of medical opinions exist: those of (1) treating physicians, (2) examining physicians, and (3) reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001).

"Generally, a treating physician's opinion carries more weight than an examining physician's [opinion], and an examining physician's opinion carries more weight than a reviewing physician's" opinion. *Id.* at 1202; *accord* 20 C.F.R. § 404.1527(d). Accordingly, "where the treating [physician's] opinion is not contradicted by another [physician], it may be rejected only for 'clear and convincing' reasons." *Lester v. Chafer*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). However, if the treating physician's opinion is contradicted by another physician, it may be rejected for "specific and legitimate reasons." *Id.* (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

An ALJ may reject a medical opinion when the medical opinion is inconsistent with medical records or is brief, conclusory, and inadequately supported by clinical findings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). An ALJ may also reject a medical opinion when it is inconsistent with the plaintiff's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Finally, "the consistency of the medical opinion with the record as a whole" is a relevant consideration in weighing competing evidence. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). In the end, "[t]he ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r of Sec. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *See lvlorgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

As stated above, Dr. de Young has been plaintiff's primary care physician since 2012.² On the day after plaintiff's first hearing, February 23, 2017, Dr. de Young provided an assessment of plaintiff's medical conditions and work-related limitations. Tr. 1217-19, 1254-56. In that assessment, Dr. de Young represented that plaintiff's left shoulder pain was worse with activity; that she "was unable to walk or stand for more than three hours in an eight hour workday;" that she experienced constant daily neck pain which was aggravated easily; that she could occasionally lift up to ten pounds; that she needed to spend five hours of each workday reclining or lying down; and that she had upper extremity limitations. Pl.'s Br. at 12. Dr. de Young represented that plaintiff was "incapable of even sedentary exertion." Tr. 26. The ALJ noted that Dr. de Young limited plaintiff's standing and walking time "despite no lower extremity impairment at all" and limited plaintiff to "sitting no more than three hours per day without explanation." *Id*. Dr. de Young opined that plaintiff's upper extremity limitations were "more consistent with acute recovery" due to recent surgery and noted that plaintiff would experience "weakness on the left." *Id*. Dr. de Young's earlier examination notes, from 2015, showed a normal range of motion in plaintiff's neck, and he did not examine her left shoulder. The ALJ noted that Dr. de Young did not treat plaintiff for either of these impairments other than prescribing pain medication and referring her for consultations. The ALJ concluded that "the

---

² The Commissioner argues that Dr. de Young's 2017 examination form was inconsistent with the alleged onset date of 2011 because Dr. de Young did not begin treating plaintiff until 2012. Because the Court affirms the ALJ's determination, the inconsistencies surrounding the alleged onset date are harmless.

Page 7 – OPINION AND ORDER

record as a whole, including the numerous inconsistencies discussed above, is inconsistent with Dr. de Young's opinion." *Id*. The ALJ therefore assigned Dr. de Young's opinion little weight.

The Court finds that the ALJ did not err in his treatment of Dr. de Young's opinions. An ALJ may reject a medical opinion that is brief, conclusory, and inadequately supported by clinical findings. *Thomas*, 278 F.3d at 957. Moreover, the ALJ not only considered the inconsistencies between Dr. de Young's limitation and entire medical record, he also not at the Dr. de Youngs limitations were at odds with his own treatment notes. Contradictions between a doctor's opinion and that doctor's own clinical notes and observations "is a clear and convincing reason for not relying on the doctor's opinion[.]" *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Given that the ALJ relied on specific and legitimate reasons to discount Dr. de Young's opinion, the Court finds no harmful error.

B.   *State Agency Medical Consultants*

Plaintiff also argues that the ALJ improperly rejected portions of two State agency medical consultants, Dr. Thomas W. Davenport and Dr. Susan Moner. Those doctors found bilateral limitations on both sides, while the ALJ noted that the record ultimately only supported limitations on the left side. The ALJ explained his decision by noting that plaintiff's limitations on the right were not severe prior to the date last insured and thus the record did not establish bilateral limitations regarding her right shoulder.

The ALJ is responsible for determining the credibility of medical evidence. *Thomas*, 278 F.3d at 958. Because the ALJ's interpretation of the evidence was rational, and he gave specific reasons for rejecting certain portions of the medical testimony, this Court must uphold the ALJ's decision.

II.     *Limitations from Plaintiff's Severe Eye Impairment*

Plaintiff next argues that the ALJ erred by inexplicably failing to assess any work-related limitations associated with plaintiff's left eye vision disorder. Although the ALJ found that plaintiff had a severe left eye impairment at step two of the five-step sequential evaluation process, plaintiff argues that the ALJ did not incorporate that impairment into plaintiff's limitations.

Plaintiff contends that remand is warranted to reassess her RFC and complete a new five-step analysis. The ALJ specifically noted that plaintiff has a left eye impairment but concluded that "the record fails to establish loss of central visual acuity or efficiency at listing level." Tr. 19. The ALJ also noted that, "the contraction of the visual fields in the better eye have not been met." Tr. 19.

Plaintiff underwent retina repair in 2010, well before the alleged onset date, and did not complain of eye symptoms again until 2015. In late 2015, plaintiff's eye physician opined that her retina looked stable, but an exam showed a vitreomacular adhesion. Plaintiff chose to postpone surgery but reported to Dr. de Young that her vision caused dizziness and falls. On January 13, 2016 plaintiff underwent surgical repair and reported good ocular comfort the following day. On January 25, plaintiff's eye surgeon opined that she should resume normal activities and that the "floaters"

plaintiff complained of would slowly improve over time. On March 22, 2016, plaintiff's left eye vision was back to 20/40.[3] Despite plaintiff's complaints, her eyesight continued to be 20/40 in her left eye and 20/20 in her right eye. And while plaintiff's representative alleged that plaintiff could not read due to vision loss, this is inconsistent with the vision testing. The ALJ did not err in finding that "the longitudinal record is inconsistent with the extent of limitation alleged by the claimant." Tr. 25.

III.  *Subjective Symptom Testimony*

Plaintiff next argues that the ALJ discounted her testimony "with no specificity as to what testimony was discredited or why." Pl.'s Br. 16. Plaintiff complains that the ALJ engaged in a recitation of the medical evidence followed by an "analysis [that] amounts to little more than vague assertions that the claimant's allegations are inconsistent with the evidence of record." Pl.'s Br. 16-17.

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony about the severity of her symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . .

---

[3] The Court notes that plaintiff's left eye impairment, before surgery, was likely a severe impairment causing more limitations than we are finding here. Yet the period when plaintiff began complaining of eye symptoms until her surgery was—at most—six months, falling short of the SSA durational requirements outlined in 42 U.S.C. § 1382c(3)(A).

Page 10 – OPINION AND ORDER

testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engaged in second-guessing." *Thomas v. Barnhart*, 278 F.3d at 959.

In weighing a plaintiff's credibility, the ALJ may consider many factors, including the medical record; ordinary techniques of credibility evaluation, such as prior inconsistent statements about the symptoms; and the claimant's daily activities. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). If a claimant testifies that she experiences pain or other symptoms at a higher level than the medical evidence of her underlying impairment supports, the Commissioner may disbelieve that testimony. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). But a plaintiff's "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

The Commissioner concedes that the ALJ based his decision to discount plaintiff's subjective testimony in part on the objective medical record but argues that the ALJ provided other clear and convincing rationale. First, the ALJ noted that plaintiff's medical examinations were inconsistent with the extent of limitations plaintiff alleges: in August 2013, her shoulder was "normal beyond subjective

tenderness," and "she demonstrated full strength and grip with a full range of motion." Tr. 22. In early 2014, plaintiff's imaging "showed advanced tendinosis, but no evidence of a tear." *Id.* The ALJ also noted that plaintiff improved with treatment, which undermined her allegations. The ALJ pointed to reports that plaintiff further improved after surgical procedures on her left shoulder and left eye. The ALJ opined that injections had helped with plaintiff's post-surgery shoulder pain and her diagnostic tests did not support limitations exceeding those identified in the RFC. The ALJ acknowledged that plaintiff had been attending physical therapy sessions after which her neck and left shoulder pain had decreased. Plaintiff reportedly achieved full range of motion in her right shoulder, and she was prescribed a TENS unit for home use which decreased her pain.

Next, the ALJ assigned significant weight to the opinions of State agency medical consultants, Thomas W. Davenport, M.D., and Susan Moner, M.D., both of whom reported plaintiff's subjective symptom allegations as "partially credible." Tr. 159, 171. Their reports stated that plaintiff could occasionally lift twenty pounds; frequently lift ten pounds; stand and/or walk about six hours per eight-hour day; and sit up to six hours per eight-hour day. They further noted that plaintiff is limited in overhead reaching on both sides. In other words, the State medical consultants found that plaintiff's statements about the intensity, persistence, and functional limiting effects of her symptoms are not substantiated by the objective medical evidence. The ALJ properly considered their opinions when assessing plaintiff's credibility.

Page 12 – OPINION AND ORDER

Finally, the ALJ found that plaintiffs daily activities undermined her allegations. The ALJ noted that plaintiff "spent time working in her garden, which was approximately 15 square feet, . . . moved her lawn and watered during the spring" and "walked her dog at the fairground for as long as her dog could walk, up to one mile." Tr. 23. Plaintiff also "had been doing some water aerobics," moved furniture, climbed a tree, and hung laundry. Tr. 23, 24. Plaintiff argues that the ALJ overstates her modest daily activities, and argues there are no inconsistencies between her disabling allegations and the "intermittent light activities" she engaged in. Pl.'s Br. at 18. The Court finds, however, that there are contradictory reports of plaintiff's ability to engage in activities of daily living. The ALJ found that the record was inconsistent with plaintiff's alleged "significant limitations regarding her ability to walk," noting that the plaintiff engaged in "fast walking" and typically spent "a quarter of her day walking or standing." Tr. 24.

The Court finds that the ALJ did not rely solely on the objective medical evidence in the record when discrediting plaintiff's subjective symptom testimony; he also relied on evidence of improvement with treatment, the opinions of state agency medical consultants, and plaintiff's daily activities. Thus, based on this record, the Court finds that the ALJ did not err in discrediting plaintiff's statements about the limiting effects of her symptoms.

IV.     *Step Five Analysis*

Finally, plaintiff argues that the ALJ failed to conduct an adequate analysis at Step Five. Specifically, plaintiff argues that the ALJ misapplied the Medical-

Page 13 – OPINION AND ORDER

Vocational Rules by classifying plaintiff as an individual closely approaching advanced rather than individual of advanced age.[4]  Plaintiff asserts that, when properly limited to sedentary work, she is disabled pursuant to Rule 201.14 as of the alleged onset date.

The ALJ's misclassification of plaintiff's age is harmless error.  Given plaintiff's education and previous work experience, including transferable skills, the Medical-Vocational guidelines provide the same outcome – not disabled – for individuals closely approaching advanced age as individuals of advanced age.  Rule 201.15; Rule 201.07.  Plaintiff's argument rests on assumption that her skills are not transferable.  Yet both VEs testified to the contrary.  The VE who testified at her first hearing noted that plaintiff's job skills "are directly transferable." Tr. 130.  The second VE stated that plaintiff's "skills would come straight across without any accommodation." Tr. 28.  The ALJ considered plaintiff's limitations alongside her age, education, and transferable work skills and concluded "a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rules 201.15 and 201.07." Tr. 28.

Plaintiff also argues that the VE's testimony was based on an incomplete hypothetical.  "If a hypothetical does not reflect all of the claimant's limitations . . . the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 2001) (citation omitted).  However, an ALJ need not incorporate limitations

---

[4] The Code of Federal Regulations lists age as a vocational factor.  An individual between 50 and 54 years old is "closely approaching advanced age" while an individual age 55 or older is "advanced age."  20 C.F.R. § 404.1563(d)-(e).

Page 14 – OPINION AND ORDER

based on testimony that has otherwise been discredited. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Here, the ALJ correctly noted that plaintiff's limitations prevented her from performing "the full range of light work" and the VE determined that plaintiff could perform sedentary, semi-skilled work. Plaintiff argues that the VE testimony should have incorporated the limitations that plaintiff would be off-task 15% of the time and that her vision was near acuity, which would result in elimination of all potential jobs in the national economy. But those limitations are unsupported by plaintiff's medical records, which suggest she may be off task up to 10% of the time, and as explained earlier, her vision for the period in question was rarely below 20/40.

      Finally, plaintiff argues that the ALJ erred by failing to explain his reliance on the second VE over the first VE. This argument is without merit. Following the first administrative hearing, the case was continued pending further documentation from plaintiff's treating physician.[5] At the second hearing, the ALJ considered in greater detail the medical evidence and clarified his determination of plaintiff's limitations before presenting updated hypotheticals to the VE. This was not error.

/ / /

/ / /

/ / /

---

     [5] The ALJ has an independent duty to fully develop the record when "an ambiguous onset date arises." *See Armstrong v. Comm'r Soc. Sec. Admin.*, 160 F.3d 537, 590 (9th Cir. 1998). At the first hearing, the ALJ found that the record did not support plaintiff's alleged onset date of 2011 without medical documentation from Dr. de Young.

Page 15 – OPINION AND ORDER

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is AFFIRMED. Accordingly, this action is dismissed.

IT IS SO ORDERED.

Dated this __21__ st day of __May__, 2020.

                                      /s/Ann Aiken
                                        Ann Aiken
                          United States District Judge